## JOSEPH NICKOLIZACK V. STATE OF NEBRASKA.

### FILED NOVEMBER 22, 1905.    No. 14,145.

1. **Criminal Law:** ACCUSED AS WITNESS. Where a defendant in a criminal case offers himself as a witness on his own behalf, he is subject to the same rules of cross-examination as other witnesses, and it is the duty of the court to keep the cross-examination within the law.

2. ——: ——: IMPEACHMENT. A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issues, for the purpose of contradicting him by other evidence if he should deny it, thereby discrediting his testimony.

3. ——: ——: ——. Where the prosecuting attorney, on the cross-examination of the accused in a criminal case, asks him if he has not been guilty of a similar offense upon another person at another time, he is concluded by the answer and cannot call another witness to impeach the accused.

4. ——: EVIDENCE. On a trial of one charged with the crime of rape, evidence of an attempt of the accused to commit a similar crime on another person is inadmissible.

5. ——: NEW TRIAL. Where the accused, in such a case, was a witness in his own behalf, and the prosecuting officer on cross-examination asked him, in substance, if he had not at a previous time been guilty of a like offense upon another young girl, naming her, and other like questions, and thereafter called the person named to the witness stand and examined her, for the purpose of not only impeaching the accused but of proving him guilty of such independent offense, *held*, that such conduct was improper and prejudicial, for which the accused should be granted a new trial.

ERROR to the district court for Holt county: JAMES J. HARRINGTON, JUDGE. *Reversed.*

*R. R. Dickson,* for plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

BARNES, J.

Joseph Nickolizack, who will hereafter be called the accused, was tried in the district court for Holt county on a charge of what is commonly called statutory rape, alleged to have been committed on the person of one Lena Kmich, a female child under the age of fifteen years. He was found guilty and was sentenced to the penitentiary for a term of six years. From that judgment he brings the case here by a petition in error.

The record discloses that there were 39 assignments of error in the motion for a new trial, and 100 of such assignments in his petition. However, we will discuss only so many of them as may be necessary to a proper disposition of the case. Counsel for the accused insists that the verdict is not sustained by the evidence; but, as we are constrained to dispose of the case upon another ground, we decline to discuss that question.

The accused further contends that the prosecuting attorney was guilty of misconduct during the trial, which was prejudicial to his rights and was reversible error in this: That the prosecutor was permitted to, and did, ask the accused, while testifying as a witness in his own behalf, if he had not, at a time previous to the transaction complained of, assaulted one Eunice Butterfield, and attempted to commit rape upon her; and, on being answered in the negative, produced the person so named as a witness for the purpose of not only impeaching him, but to further show that he had been guilty of an independent offense like the one for which he was being

tried; that the prosecuting attorney was permitted to, and did, inquire of other witnesses if they had not heard that the accused on one occasion had taken his wife down upon the floor, in the presence of his mother-in-law and their children, and had forcible sexual intercourse with her. It appears that, while the accused was on the witness stand giving testimony in his own behalf, and after he had positively and emphatically denied the commission of the crime charged against him, he was cross-examined by the county attorney, who was permitted to, and did, ask him the following questions: "Q. Do you wish to be understood that you never committed a crime before?  A. How is that?  Q. That you never committed a crime before. Is that the understanding?  A. How do you mean?  Q. That you never committed any offense before?  A. Well, I never did.  Q. Do you know this little Butterfield girl?  A. Yes, sir.  Q. Do you know what her name is?  A. Eunice, I guess.  *  *  *  Q. Do you remember an occasion when she came down to get you to go up to her father's on some business of some kind— about two years ago?  A. I don't remember.  Q. You don't remember that?  Do you remember an occasion when you grabbed hold of her and pulled her over on your lap and tried to get your hands up under her clothes?  A. No, sir.  Q. You say you did not do that?  A. No, sir; not that I remember of.  Q. You would remember a thing like that, wouldn't you?  A. I guess I would if I done it.  *  *  *  Q. Will you answer you did not do that?  A. Yes, sir."  That the cross-examination complained of was incompetent and highly improper, there can be no doubt.  The rule is too well established to admit of question that, where a witness is cross-examined on a matter collateral to the issues, he cannot, as to his answer be contradicted by the party putting the question.  When a party on cross-examination asks a witness an immaterial question, he is concluded by the answer and will not be permitted to *call a witness* to contradict it.  *Mc-Duffie v. Bentley,* 27 Neb. 380; *Carpenter v. Lingenfelter,*

42 Neb. 728; *Farmers Loan & Trust Co. v. Montgomery,* 30 Neb. 33; *Johnston v. Spencer,* 51 Neb. 202. A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issues, for the purpose of contradicting him by other evidence if he should deny it, thereby discrediting his testimony. *Carter v. State,* 36 Neb. 481. The rule is perhaps more strongly stated in *Republican Valley R. Co. v. Linn,* 15 Neb. 234, where it is said:

"A party who on cross-examination of a witness asks him an immaterial question is concluded by his answer and cannot call another witness to impeach him."

That this evidence was incompetent and immaterial there can be no question. In *McAllister v. State,* 112 Wis. 496, it was held: "On a trial for an assault with intent to rape, evidence of an attempt of accused to commit a similar crime on another person is inadmissible."

In *Elliott v. State,* 34 Neb. 48, where the accused was a witness in his own behalf, the prosecuting officer on cross-examination questioned him as to his being charged with the commission of a similar independent offense, one not connected with the crime for which he was being tried, and such cross-examination was held to be highly improper and prejudicial.

After having thus cross-examined the accused, and having obtained his denial of an assault upon the Butterfield girl, the county attorney, in rebuttal, called her as a witness, and, after proving by her that some two years before the present charge was preferred against the accused she was with him going from his place to her home, asked her the following questions: "Q. What, if anything, did the accused do that day on the road up to your place?" This question was objected to and the objection sustained, whereupon the prosecuting attorney excepted. He then asked her: "Q. I will ask you whether or not the defendant attempted to put his hands up under your clothing?" This was also excluded, and the state excepted. The court thereupon told the jury to disregard the last question.

Whereupon the county attorney made an offer of proof, which was objected to and the objection was sustained, to which ruling he excepted. We are of the opinion that, in view of the condition of the evidence and under the circumstances, as disclosed by the record in this case, such a proceeding amounts to gross misconduct on the part of the prosecuting officer. He not only asked the accused incompetent and irrelevant questions, with the purpose, as it must have appeared to the jury, of showing that he had been guilty of a similar offense upon another young girl at a previous time, but, failing to obtain an affirmative answer to his question, he then proposed to impeach the accused by the evidence of the person alluded to. He must have known that he had no right to so cross-examine the accused, and having such knowledge, he further resorted to the extreme and unwarranted procedure of putting Eunice Butterfield on the witness stand, and propounding to her the questions above set forth. The fact that the testimony was objected to by the accused, and was thus excluded, would strongly indicate to the jury that the witness, if permitted to testify, would not only impeach him, but would prove him guilty of a similar offense. In *Elliott v. State, supra,* Judge MAXWELL, speaking for the court, said:

"The plaintiff was a witness in his own behalf and on cross-examination the county attorney asked the accused the following questions: Q. Were you ever in Burnett county, Texas? A. Yes, sir. Q. Is it not a fact that you stole horses in Burnett county? A. I never did; no, sir. Q. Don't you know that the sheriff has a warrant for you for stealing a horse in that county? A. I don't know it; no, sir. And other questions of like character. Such cross-examination is highly improper and cannot fail to be prejudicial. A prosecuting officer, in his zeal to enforce the law, must not forget that he also occupies a semi-judicial position, and that his duty requires him to resort to no questionable or improper means to secure a conviction. The emblem on every court house, of justice hold-

ing the scales in equipoise, would be a meaningless symbol if even one of the poorest and most abject of human kind was unjustly deprived of a right. The state—the people collectively in their corporate capacity—will not, through its officers, be permitted to do acts which every fair-minded individual thereof would condemn, and which, as individuals, they would not sanction. The questions quoted and others of like kind must have been prejudicial to the accused. Where a defendant in a criminal case offers himself as a witness on his own behalf, he is subject to the same rules of cross-examination as other witnesses, and it is the duty of the court to keep the cross-examination within the law."

As stated above, the prosecuting attorney is a semi-judicial officer. The state for whom he prosecutes does not desire the conviction of an innocent person, and it is as much his duty to see to it that such conviction shall not take place as it is his duty to use his utmost endeavors to fairly convict the guilty. He should never let his zeal, or the temptation to obtain the glittering bauble of success, lead him to the employment of questionable or unfair methods for the purpose of securing a conviction. It was stated by Lord Chief Justice Hale that the charge of rape was one easy to be made and difficult to be defended against. It is a matter of common knowledge that this offense is so revolting in its nature that for one to be charged with its commission is sufficient to prejudice the human mind against him. Therefore prosecuting attorneys and courts should both carefully guard the rights of the defendant in such cases, and see to it that he is not unjustly convicted. In the instant case, the public prosecutor seems to have forgotten these well-established and salutary rules, and allowed himself to resort to a course of conduct which was unfair and highly prejudicial to the rights of the accused. That such conduct amounts to reversible error seems clear, and for this reason, if for no other, the judgment of the district court should be reversed and a new trial granted.

Having concluded to reverse the judgment for the reason above mentioned, we will not undertake to discuss or pass upon the many other assignments of error contained in the record. The judgment of the district court is therefore reversed and the cause remanded for a new trial.

REVERSED.

HOLCOMB, C. J., expresses no opinion.