ARTHUR A. FOREMAN V. STATE OF NEBRASKA.

FILED NOVEMBER 13, 1934. NO. 28851.

*Flansburg, Lee & Sheldahl* and *Cook & Cook*, for plaintiff in error.

*Paul F. Good, Attorney General,* and *R. H. Beatty, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

Plaintiff in error, who will be hereinafter referred to as

the defendant, was president of the Farmers State Bank of Overton, Nebraska, and in the district court for Dawson county, upon trial by jury, was convicted of a violation of the banking laws on counts 9, 13, and 14 of the information charging such violations, and has filed his petition in error in this court to review the judgment of conviction. The case was heard here upon the record and exhaustive briefs on behalf of defendant and state, and on April 10, 1934, an opinion of this court was filed affirming the judgment of the district court as to count 9, and reversing same as to counts 13 and 14. Thereafter a rehearing was allowed, argument had, and the case is now before us for decision. The statute under which the information was drawn substantially provides that any person who shall wilfully and knowingly make any false statement or entry in the books of any banking corporation, or shall knowingly subscribe to false papers with intent to deceive any person authorized to examine into the affairs of such corporation, or make or publish any false statement of the amount of the assets or liabilities of such corporation, shall be deemed guilty of a felony. The specific charge in count 9 of the information is that defendant made a false report to the department of trade and commerce that the Overton bank, on July 1, 1929, had a balance due it from the South Omaha State Bank in the sum of $27,798.69, whereas in truth and in fact the amount so due was only $17,798.69. Upon the trial the district court, over objections of defendant, received evidence of three prior transactions between the two banks, similar to the one under investigation, of dates, June 25, 1927, $10,000, September 27, 1927, $10,000, and March 10, 1929, $30,000, for the purpose of showing the intent of defendant in making the false statement of July 1, 1929. The former opinion of this court is reported in *Foreman v. State*, 126 Neb. 619, to which reference is made for a further statement of the facts.

The defendant presents nine grounds for rehearing, the first three of which assail the opinion of this court as erroneous in approving the ruling of the trial court over-

ruling defendant's objections to evidence tending to establish other similar offenses alleged to have been committed by defendant prior to the one charged. It is not contended but that in some cases such evidence is competent as bearing upon the intent of the defendant in doing the acts charged as infractions of the law, where the intent with which such acts were done is of the substance of the crime charged; but it is contended that before such evidence may be received it must be of such a positive and convincing character as to warrant the conclusion by reasonable minds that a crime had in fact been previously committed. It was stated by the prosecution that the only object of the testimony offered was to prove the intent with which the crime charged was committed, and the court, by its instructions, restricted the jury in their consideration of such evidence to the purpose stated. It was the contention of the state that these previous transactions were a mere sham entered into for the purpose of deceiving the banking department as to the true condition of the Overton bank, while the defendant insists that they were loans procured in good faith by the Overton bank from the South Omaha State Bank for the purpose of increasing the reserves of the Overton bank. With reference to these transactions we said in our former opinion: "Defendant contends that in each instance he had sent a note to the South Omaha State Bank for the amount for which he had taken credit on the books of the Overton bank, and that the amount shown by the report was, in fact, in the account of the Overton bank in South Omaha. There was evidence of alteration of the books of the Overton bank, indicating that changes had been made to show a deposit to defendant's account, and to show a credit of the Overton bank in the South Omaha State Bank on these occasions; and there was evidence on behalf of the state which would indicate that these credits were fictitious and that the reports, showing the credits in the South Omaha bank, were false. It is true that the evidence on behalf of defendant tends to show that each of the transactions was

*bona fide* and that the changes in the books of the Overton bank were made only for the purpose of having them reflect the true state of facts." It may be added that it also appeared from the evidence that the transactions referred to were all entered into in anticipation of calls from the banking department for statements of the financial condition of the bank, which were the subject of contemporaneous correspondence between defendant and one McGurk, president of the South Omaha State Bank, McGurk and defendant being brothers-in-law; that in each instance credit was taken a few days before the call was anticipated, and charged out by the South Omaha State Bank a few days after the call had been completed; that the credit was never drawn upon by the borrowing bank; that in one instance credit was not given upon the books of the South Omaha bank until after the date for which the call had been made, and that the records of the South Omaha bank had been changed so as to show the credit prior to such date. It also appeared that interest was paid by the Overton bank on these credits, and defendant stresses the point that Hoagland, an auditor called by the state, testified that the entries showed actual loans by South Omaha bank to Overton bank; but Hoagland had no personal knowledge of the facts, and was simply stating the effect of the book entries. The true nature of these transactions was for determination of the jury. On this point defendant contends that before evidence of other crimes may be admitted the evidence thereof must be clear and convincing, that proof of mere suspicious circumstances is not sufficient, and that his motion to strike out the evidence of this character should have been sustained. If the court can say as a matter of law that the evidence merely casts suspicion upon the previous transactions, no doubt the motion should have been sustained. But in this case the circumstances surrounding the prior transactions were of such a nature that if defendant were put upon trial the evidence would have presented a jury question; and so we think in this case the evidence was properly received, and

it was for the jury to determine whether or not it tended to prove that a previous crime had been committed with unlawful intent, as bearing upon the question of defendant's intent relative to the crime charged. In fact we held in *Koenigstein v. State,* 101 Neb. 229, that the fact that defendant had been tried and acquitted of the former offense did not exclude evidence of that offense upon a subsequent trial of defendant for a similar offense. And in *State v. Sparks,* 79 Neb. 511, it was held that evidence of previous similar acts was properly received upon the question of knowledge or intent, although it was claimed that the evidence was insufficient to establish that defendant was guilty of the other crimes. Without intending to express any opinion as to the weight or sufficiency of this evidence, we are of the opinion that it lends support to the contention of the state, and was sufficient to justify its reception for the consideration of the jury upon the question of the intent of defendant when he executed the report which is the basis of the charge under count 9 of the information. We, therefore, adhere to our former opinion on this point.

The fourth ground urged for rehearing refers to the refusal of the trial court to give instruction No. 3 requested by defendant to the effect that the mere borrowing of money by the bank with the intent of raising the reserve was not an offense, and that the intent to do so was not the criminal intent referred to in count 9. This point was not disposed of by our former opinion. We think the instruction stated the law and should have been given, or one like it in substance in the language of the court, but we do not determine at this time whether or not the refusal of the court to so instruct was of such a prejudicial character as to require reversal.

The fifth and sixth grounds relate to the refusal of the trial court to give instruction No. 1-a requested by defendant in the following terms:

"You are instructed that if you should find that the defendant did, as he testified, sign the report mentioned in

count 9, before July 5th and while the credit from the South Omaha State Bank of $10,000 appeared on the books of the Farmers State Bank of Overton, and if you find that he also then believed that he was entitled to the credit and that the report was true, and if you find that the report did not come to his attention again and he assumed it had been sent in to the department of trade and commerce before he learned on July 5th that the South Omaha State Bank had refused the credit, and if you further find that the report was later taken, without his knowledge, to the notary who subscribed it and placed his seal on it on the 9th day of July,. or at whatever time you find it to have been done, then you are instructed that defendant finished making his statement before July 5th and without intent to deceive and your verdict on count 9 should in such event be for the defendant."

The contention of defendant on this point was dismissed in our former opinion with the remark that "The requested instruction was subject to criticism as pointing out and emphasizing particular testimony." The criticism is just, but after hearing argument and reconsidering the instruction we are of the opinion that the instruction was not given that consideration to which it was entitled and the assignment of error with. relation thereto has not been adequately disposed of. The claim of the state was that the defendant executed the report in question with intent to deceive the banking department. The defendant admitted that the report in fact was false, but claimed that at the time it was made he believed it to be true and that the making of the report was the result of an innocent mistake on his part. He claimed, and the evidence tended to show, that on several previous occasions he had pursued the same course as he did here, namely, sent his note to the South Omaha bank for credit, and that in every instance the credit had been allowed, and that he had no reason to believe that it would not be allowed in this instance; that he signed the report on July 3 and did not know that the credit had been disallowed by the South

Omaha bank until July 5, which was after the date he supposed the report had gone forward. This was the only defense that the defendant had against the charge of intent to deceive; but this defense was not covered or referred to by any instruction given by the court. Under the information proof of the mere making of a false report was not sufficient, but in addition it must be charged and proved that the defendant thereby intended to deceive. If the execution of the report was made with the honest belief at the time that it was true, and was in fact attributable to an innocent mistake, it cannot be claimed that an intent to deceive is established. We must not be understood as giving our approval to the precise form or language of the requested instruction, but it contained the kernel of the prisoner's defense which he had a right to have submitted to the jury.

The law is well established in this state that it is the duty of the court to instruct the jury upon all the issues of the case presented by the pleadings and the evidence. In civil cases the issues are presented in writing and no other issues need be stated, but in criminal cases plea of not guilty not only puts in issue all of the material allegations of the information but lets in any other matter of defense, such as justifiable homicide, self-defense, insanity, alibi, mistake and so forth; and if there is any sufficient evidence upon any of those matters to go to the jury, it is the duty of the court to instruct as to the law applicable, whether the defendant requests such instruction or not. *Trobough v. State,* 120 Neb. 453; *Blue Valley State Bank v. Milburn,* 120 Neb. 421. If a requested instruction cannot be given in its exact language, the point should be covered nevertheless by an instruction couched in proper terms by the court. *Pospisil v. Acton,* 118 Neb. 200. We think that in any of the cases above supposed, if the court had failed in its instructions to call the attention of the jury to the defense offered and supported by evidence, prejudicial error would have been shown. Although no error may be shown by the refusal of the requested in-

struction on account of its phraseology, nevertheless we think the court should have instructed the jury of the nature of defendant's claim, and to the effect that, if they believed from the evidence that defendant signed the report under an innocent mistake and without any intent to deceive, they should acquit.

We are reluctant to reverse a case where defendant has been twice convicted by a jury, and thus put the state to the expense of another trial, but the defendant is entitled to a fair trial, and this he cannot have unless the matters which he claims constitute his defense are in some way presented to the jury as one of the issues for their decision; and it is our duty to secure the defendant in his right by requiring that the jury, who are the ultimate judges of the facts, be properly instructed as to the issues and applicable law that they may be led to a correct verdict. We are clearly of the opinion that the refusal to give the requested instruction, or at least to explain to the jury by some instruction the nature of the defendant's defense, was error prejudicial to the defendant, and requires a reversal of the judgment of the district court.

The case of *Flannigan v. State*, 124 Neb. 748, cited by the state on this point, is not applicable or controlling, for the reason that the evidence upon what, in the language of the court, "defendant terms his defense" was insufficient to present that question to the jury, it appearing practically without dispute that the note which defendant claimed as an asset and the liability of the First National Bank thereon as indorser had been included in a settlement between the banks.

The seventh ground for rehearing attacks instructions Nos. 7 and 8 given by the trial court to the effect that the jury must determine the matter of intent from the facts and circumstances shown in the evidence. The point made is that the instructions withdrew from the consideration of the jury the testimony of the defendant himself that when he executed the report in question he believed it to be true and had no intention to deceive. In view of the

other instructions given by the court, we held in our former opinion that this instruction was not prejudicial error, and we adhere to that holding. We think it proper to suggest, however, that the court should have instructed that the matter of intent was to be determined from the facts and circumstances and evidence of the witnesses.

The eighth ground charges that the evidence received on counts 13 and 14 of the information was of such a character as to prejudice the defendant in his trial upon count 9. Inasmuch as in our former opinion, to which we adhere, counts 13 and 14 were dismissed, and evidence upon matters referred to in said counts will not be offered upon another trial, we need not determine the point.

The ninth ground urged is that the evidence is insufficient to prove the defendant guilty beyond a reasonable doubt. After a careful study and review of the evidence, we are of the opinion .that the evidence is sufficient to submit the question of defendant's guilt to the jury.

It follows that the previous opinion of this court is adhered to except as to points five and six, as to which it is set aside and withdrawn, and the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.