UNITED STATES of America, Plaintiff,

v.

Alva B. HARPER, Defendant.

Cr. No. 725–55.

United States District Court District of Columbia.

Feb. 1, 1956.

William S. Thompson and Joseph P. McCormick, Washington, D. C., for defendant, for the motion.

Victor Caputy, Asst. U. S. Atty., Washington, D. C., opposed.

HOLTZOFF, District Judge.

The defendant, Alva B. Harper, a physician, was convicted on a charge of performing an abortion, and moves for a new trial. The principal question that deserves discussion, relates to the admissibility of evidence. It is claimed that the court erred in admitting evidence that on two prior occasions the defendant had performed abortions on women other than the complaining witness.

The Government, in its case in chief, introduced evidence to the effect that the victim of the abortion called at the defendant's office; that she explained that she wanted him to bring about a miscarriage; and that at a later date, by prearrangement, she returned to his office when he inserted some medicine into her body through an instrument known as a speculum. She testified that she immediately became sick and that a few days later she was taken to the District of Columbia General Hospital, where she had a miscarriage. The fact that she had a miscarriage was corroborated by the hospital records. The defendant took the witness stand in his own behalf. He admitted that he had examined and treated the complaining witness, but claimed that she was bleeding, that he was afraid that she might lose the baby, and that the medicine he gave her was intended to prevent a miscarriage.

In rebuttal the Government called two other women, each of whom testified that on a prior occasion within a few weeks of the date involved in this case, the defendant, at her request, performed an abortion on her. The court admitted this evidence over objection solely on the issue of the defendant's intent to perform an abortion on the complaining witness. When the evidence was introduced, the court apprized the jury of the specific purpose for which it was admitted, and further explained this limitation in detail in its charge to the jury. In its instructions to the jury the court enumerated intent as one of the elements of the offense that the Government had the burden of proving.

It is, of course, an elementary principle that at the trial of a criminal case, evidence that the defendant has committed crimes other than the one with which he is charged, is not admissible. The basic reason for this rule is that the prejudice that may be caused to the defendant if such a fact were admitted in evidence, might outweigh its probative value. On the other hand, it is equally well settled that evidence of other similar acts of the defendant may be admitted to show motive, knowledge, intent, or a common design, whenever any of these elements is relevant. That such acts may also constitute crimes, does not bar their admission and does not affect their competency. While the bare fact that a defendant has committed other crimes is not in and of itself admissible against him, the fact that evidence otherwise competent and relevant would also show that the defendant committed other crimes, is no reason for its exclusion. A familiar example is a case involving the passing of counterfeit money. If the defendant claims that he did not know that the money was spurious and that he did not intend to pass any counterfeit money, it is admissible to show that he had passed counterfeit money on other occasions, in order to prove that it was no mere accident that at the time in question he had uttered a counterfeit bill, or a counterfeit coin.

This exception to the general rule was adopted at an early date in Massa-

chusetts in an opinion written by Chief Justice Shaw. In Commonwealth v. Stone, 4 Metc., Mass., 43, 47, which involved a charge of fraudulently passing bills of exchange of a defunct bank, this great jurist wrote as follows:

"The fifth exception was to the admission of proof of the possession and passing of other similar bills, as evidence of the *scienter*.

"This is an exception to the general rule of evidence. But it must be considered that it is to prove a fact not proveable by direct evidence; that is, a guilty knowledge and purpose of mind, which can rarely be proved by admissions or declarations, and can in general be proved only by external acts and conduct. The case is strictly analogous to the rule in relation to proof of *scienter* on a charge of passing counterfeit bills or coins, which is well established here and in England."

A scholarly and exhaustive discussion of this general problem is found in the leading case of People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193. The court discusses the point involved here as follows 168 N.Y. at page 293, 61 N.E. at page 313:

"'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish: (1) Motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.'"

On the question of intent the opinion contains the following explanation 168 N.Y. at pages 297–298, 61 N.E. at page 296:

"But criminal intent is always essential to the commission of crime. There are cases in which the intent may be inferred from the nature of the act. There are others where willful intent or guilty knowledge must be proved before a conviction can be had. Familiar illustrations of the latter rule are to be found in cases of passing counterfeit money, forgery, receiving stolen property, and obtaining money under false pretenses. An innocent man may in a single instance pass a counterfeit coin or bill. Therefore intent is of the essence of the crime, and previous offenses of a similar character by the same person may be proved to show intent. * * * So, in a case where the defendant is charged with having received stolen property, guilty knowledge is the gravamen of the offense, and *scienter* may be proven by other previous similar acts. * * * In cases of alleged forgery of checks, etc., evidence is admissible to show that at or near the same time that the instrument described in the indictment was forged or uttered the defendant had passed or had in his possession similar forged instruments, as it tends to prove intent. * * * On the trial of an indictment for obtaining goods by false representations, similar representations made by the defendant to creditors from whom goods had been previously purchased by him were held admissible to prove intent. * * * It will be seen that the crimes referred to under this head constitute distinct classes in which the intent is not to be inferred from the commission of the act, and in which proof of intent is often unobtainable except by evidence of successive repetitions of the act."

The exception to the rule excluding evidence of other crimes, was adopted for the Federal courts in Wood v. United States, 16 Pet. 342, 359–360, 10 L. Ed. 987. That case involved an action to forfeit an importation on the ground that the goods had been fraudulently invoiced. In an opinion written by Mr. Justice Story for a unanimous bench, the Supreme Court approved the action

of the trial judge in admitting in evidence the fact that the defendant had submitted fraudulent invoices in respect to other importations. The learned Justice wrote as follows on this question:

"Passing from this, the next point presented for consideration is, whether there was an error in the admission of the evidence of fraud, deducible from the other invoices offered in the case. We are of opinion, that there was none. The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act, taken by itself, may not be decisive either way; but when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty."

The rule admitting evidence of this type has been repeatedly approved and applied in the District of Columbia, Partridge v. United States, 39 App.D.C. 571, 576; Eagles v. United States, 58 App.D.C. 122, 124, 25 F.2d 546; Fall v. United States, 60 App.D.C. 124, 130, 49 F.2d 506; and Miller v. United States, 93 U.S.App.D.C. 76, 207 F.2d 33.

Fall v. United States, supra, is of particular interest. The defendant, a Government officer, was convicted of bribery. The Court of Appeals sustained the action of the trial judge in admitting evidence that the accused had participated in another similar transaction as bearing upon his motive or intent.

In numerous prosecutions for abortion, evidence that the defendant had committed other similar offenses, has been admitted: People v. Morani, 196 Cal. 154, 157–159, 236 P. 135; Max v. People, 78 Colo. 178, 180, 240 P. 697; State v. Brown, 3 Boyce 499, 26 Del. 499, 504, 85 A. 797; State v. Doty, 167 Minn. 164, 208 N.W. 760; Rice v. State, 120 Neb. 641, 645, 234 N.W. 566; State v. Brandenburg, 137 N.J.L. 124, 126, 58 A.2d 709; State v. Sturchio, 130 N.J.L. 259, 32 A.2d 577; Miller v. State, 189 Tenn. 281, 287, 225 S.W.2d 62, 15 A. L.R.2d 1076.

In State v. Brown, supra, 26 Del. at page 507, 85 A. at page 801, it was stated that:

"Abortion, or the attempt to procure miscarriage, are offenses in the trial of which evidence of similar acts has been generally admitted."

In Miller v. State, supra, 189 Tenn. at page 287, 225 S.W.2d at page 64, it was said:

"Where a felonious intent is an essential element of the crime, as it is in an attempt to procure an abortion, and the accused claims that his acts were lawful and innocent, it is competent for the prosecution to rebut the testimony of the accused by evidence of other criminal acts of his where he used the same or similar means to bring about the same result."

■ In the light of the foregoing discussion, the court is of the opinion that the evidence here in question was properly admitted.

■ One other point merits brief mention. The defendant urges that the court erred in excluding evidence that the complaining witness was not in fact pregnant. Actually, however, the court did not exclude any such evidence, because none was tendered. The court indicated that in the light of Peckham v. United States, 93 U.S.App.D.C. 136, 210 F.2d 693, the Government did not have the burden of proving beyond a reasonable doubt that the complaining witness was in fact pregnant. The defendant, however, did not offer proof to the contrary. He sought merely to introduce opinion evidence to the effect

8

that the symptoms described by the complaining witness to the defendant did not conclusively indicate that she was pregnant. This testimony was excluded as irrelevant and incompetent. The entire issue, however, is academic because the Government offered proof through the complaining witness, as well as by hospital records, that she in fact had a miscarriage, which obviously could not have occurred if she had not been pregnant. No evidence to the contrary was adduced in the defendant's behalf. Moreover, the defendant himself testified that he examined and treated the complaining witness; that she was bleeding and he feared that she would lose her baby; and that he injected medicine into her body, not for the purpose of producing a miscarriage, but with a view to preventing one.

The evidence of guilt was overwhelming and fully sustains the verdict. No valid reason is perceived for setting it aside.

Motion for a new trial is denied.